IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FELECIA B., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 20 C 6108 |
| ) | |
| KILOLO KIJAKAZI, Acting ) | Magistrate Judge Finnegan |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Felecia B. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing memorandum in support of affirming the decision. After careful review of the record and the parties' respective arguments, the Court finds that the case must be remanded for further proceedings.

## BACKGROUND

Plaintiff applied for DIB and SSI on September 19, 2017, alleging in both applications that she became disabled on January 1, 2015 due to a herniated disc, knee problems, cervical cancer in remission, a ruptured stomach ulcer, breathing problems,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

surgical removal of breast tumors, difficulty walking and standing, hearing loss in the right ear, non-cancerous polyps, and hemorrhoids. (R. 188-200, 219). Born in 1963, Plaintiff was 51 years old as of the alleged disability onset date, making her a person closely approaching advanced age. (R. 188); 20 C.F.R. §§ 404.1563(d); 20 C.F.R. § 416.963(d). She subsequently changed categories to a person of advanced age (age 55 or older). (R. 188); 20 C.F.R. § 404.1563(e); 20 C.F.R. § 416.963(e). Plaintiff has a 10th grade education and lives with her elderly mother. (R. 43, 220). She spent four years working as a home healthcare provider from 2003 to 2007, and was self-employed as a hair stylist from 2004 to 2007. (R. 45-46, 220). Most recently, Plaintiff worked part-time in the food service industry from August 2013 until she quit on January 1, 2015 due to her conditions. (R. 44, 220).

The Social Security Administration denied Plaintiff's applications initially on November 17, 2017, and again upon reconsideration on July 26, 2018. (R. 63-99). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Lana Johnson (the "ALJ") on September 25, 2019. (R. 38). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Linda Gels (the "VE"). (R. 40-62). On October 29, 2019, the ALJ found that Plaintiff's degenerative joint disease of the knees, degenerative disc disease of the lumbar spine, and obesity are severe impairments, but that they do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16-19). After reviewing the evidence, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work with: no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; and occasional balancing, stooping, kneeling, crouching, and crawling. (R. 19-27).

2

The ALJ accepted the VE's testimony that a person with Plaintiff's background and this RFC could perform Plaintiff's past work as a hair stylist. (R. 27). As a result, the ALJ concluded that Plaintiff was not disabled at any time from the January 1, 2015 alleged disability onset date through the date of the decision. (*Id.*). The Appeals Council denied Plaintiff's request for review on September 4, 2020. (R. 1-6). That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. §§ 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of her request for reversal or remand, Plaintiff argues that the ALJ: (1) erred in weighing the opinion evidence of record; (2) made a flawed RFC determination that failed to account for her mental impairments; and (3) improperly evaluated her subjective statements regarding the limiting effects of her symptoms. For reasons discussed in this opinion, the Court finds that the case must be remanded for further consideration of Plaintiff's ability to perform her past relevant work despite limitations in concentration, persistence, or pace.

## DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's final decision is authorized by the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). In reviewing this decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "'displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.'" *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting

*Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). *See also L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1151-52 (7th Cir. 2019). The Court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

In making its determination, the Court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). When the ALJ's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.     Five-Step Inquiry**

To recover DIB or SSI, a claimant must establish that she is disabled within the meaning of the Social Security Act.[2] *Shewmake v. Colvin*, No. 15 C 6734, 2016 WL 6948380, at *1 (N.D. Ill. Nov. 28, 2016). A claimant is disabled if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

---

[2]     Because the regulations governing DIB and SSI are substantially identical, for ease of reference, only the DIB regulations are cited herein.

4

be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

**C. Analysis**

    **1. Opinion Evidence**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in finding that the opinion from his treating family medicine physician David J. Alengo, M.D. was not persuasive or supported by the record. Since Plaintiff filed her claims in September 2017, the treating source rule used for claims filed before March 27, 2017 does not apply. This means the ALJ was not required to "defer or give any specific evidentiary weight" to any medical opinion, including a treating physician's opinion. 20 C.F.R. § 404.1520c(a). *See also* Social Security Administration, *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819 (Jan. 18, 2017). Instead, the ALJ was required to "evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's

5

relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). An ALJ must explain how she considered the first two factors (supportability and consistency) and may but is not required to explain her consideration of the other factors. 20 C.F.R. § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle D.*, 2022 WL 972280, at *4 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency assesses how a medical opinion squares with other evidence in the record." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)).

Dr. Alengo completed a Physical Residual Functional Capacity Questionnaire for Plaintiff on May 11, 2018 opining that she suffers from severe functional limitations that preclude all work activity. According to Dr. Alengo, Plaintiff's diagnoses include: end stage post-traumatic arthritis in both knees; degenerative disc disease of the lumbosacral spine; moderate to severe chronic obstructive pulmonary disease ("COPD") causing dyspnea with exertion; severe depression; and GERD. (R. 739). The objective signs of these conditions are marked tenderness and decreased range of motion in both knees with mild effusion, and tenderness over the vertebral process of the lumbosacral spine with paraspinal tenderness and occasional spasm. Dr. Alengo indicated that as a result of her conditions, Plaintiff experiences chronic severe pain in the low back and knees that is precipitated by activity and weather changes, leaving Plaintiff's prognosis "poor." (*Id.*). Her treatment protocol includes NSAIDs, opioids, analgesics, and muscle relaxants,

6

which cause fatigue and occasional dizziness. Dr. Alengo also opined that Plaintiff suffers from depression, and that during a typical workday, pain and other symptoms would constantly interfere with the attention and concentration needed to perform even simple work tasks. (*Id.*). Plaintiff can only walk 1/4 block without rest or severe pain, sit for 1 hour at a time, stand for 5 minutes at a time, and sit/stand/walk for less than 2 hours in an 8-hour workday. (R. 739-40). She needs a cane to stand and walk and can never lift and carry any amount of weight. (R. 740).

In discounting this opinion, the ALJ noted that it was unsupported by the objective evidence and inconsistent with his own treatment notes. (R. 26). The Court finds no error in this assessment. Though Dr. Alengo indicated that he had been treating Plaintiff monthly for 2 1/2 years, the first time he actually saw her was on February 8, 2018. Prior to that date, Plaintiff regularly sought treatment at Dr. Alengo's practice, Family Medicine Waukegan, but she saw a variety of nurse practitioners and physicians assistants. On October 12, 2015, Plaintiff went to Kathleen Mariani, PA complaining of lower back pain. Her PHQ-9 depression screening score was 0 and an exam revealed normal gait, normal respirations, full and painless range of motion in the neck and back, and no edema. (R. 341-42). PA Mariani recommended some routine preventative health care measures. (R. 342). An x-ray of Plaintiff's lumbosacral spine dated October 26, 2015 showed severe degenerative disc disease at L5-S1 and facet arthropathy at L4-L5 and L5-S1, but an exam the next day documented normal sensation, gait, and strength, as well as normal mood, affect, and respiration. (R. 347, 514). Plaintiff was not taking any medication at that time so Briana Aiken, PA prescribed a 30-day course of the NSAID Mobic. (R. 348).

7

Two days later, on October 29, 2015, Plaintiff saw gastroenterologist Cynthia Wait, M.D., for episodes of vomiting. (R. 303). Plaintiff denied having any respiratory problems, depression, anxiety, back pain, joint pain, or myalgia. Dr. Wait instructed Plaintiff to stop taking Mobic and other NSAIDs because they cause ulcers. (R. 305). PA Mariani examined Plaintiff again on November 9, 2015 and noted normal: respiration; mood and affect; range of motion in the extremities; and sensation, strength, and gait. (R. 350). A subsequent exam on December 9, 2015 remained the same except that Plaintiff had pain in her low back with range of motion. Karen Ann Kowalczyk, APN, NP prescribed Naproxen and Norco. (R. 355). Plaintiff continued to complain of low back pain on January 11, 2016 but PA Mariani made no changes to her medication regimen. (R. 357-58). The following month on February 9, 2016, Plaintiff started reporting pain in the right knee. Her depression score was 1, meaning minimal depression, and an exam showed normal lungs, normal range of motion in the spine with no tenderness, normal range of motion in the extremities with no edema, and normal mood and affect. (R. 360-61). Jennifer Horton, PA instructed Plaintiff to take ibuprofen. (R. 361). At a follow-up visit with Dr. Wait on March 31, 2016, Plaintiff denied having respiratory problems, anxiety, depression, back pain, joint pain, or myalgia. (R. 300).

Over the next year and a half, Plaintiff continued to complain of back and knee pain, but exams routinely documented normal or only mild findings. On April 14 and December 16, 2016, Plaintiff exhibited normal range of motion in the spine with no tenderness, normal range of motion in the extremities with no edema, and mild to minimal depression. (R. 363-64, 366-67). A December 16, 2016 x-ray of the knees showed moderate degenerative joint disease (R. 540), but on December 22, 2016 Plaintiff had

8

normal range of motion in the extremities, normal sensation/strength/gait, and normal mood/affect even though she was not taking any medication. (R. 369-70). Throughout 2017, Plaintiff's exams continued to document normal lung function, normal sensation, normal strength, normal gait, and minimal depression. (R. 371, 374-75, 377-78, 380, 383-84, 386-87, 389-90, 393-94, 399-400, 402-03, 405-06, 408-09, 411-12, 628-29, 414-15, 443, 606-07, 609-10, 612-13, 615, 617). Plaintiff started taking Norco beginning January 31, 2017, added Flexeril (a muscle relaxant) in July 2017, switched to Soma in August 2017 because Flexeril was not working, then switched again to Carisoprodol because Soma was too expensive. (R. 375, 409, 415, 623). Plaintiff also started taking Breo for COPD on May 25, 2017, and added Advair and Anoro inhalers in December 2017. (R. 607, 622-23).

Plaintiff's exams remained unchanged in January 2018. (R. 600-01, 603-04). On February 8, 2018, Plaintiff had her first evaluation with Dr. Alengo. Plaintiff exhibited tenderness of the vertebral process of the lumbar spine with paraspinal spasms, but normal gait, sensation, and strength, and minimal depression. She reported that medications helped to control the pain and Dr. Alengo instructed her to continue Carisoprodol and Norco. He also prescribed a cane for her primary osteoarthritis. (R. 598-99). Plaintiff saw Dr. Alengo again on March 18, 2018 requesting that he complete disability paperwork. Her back was tender to palpation of the lumbosacral spine with paraspinal muscle tenderness, and she had tenderness to palpation of the medial/lateral joint of both knees. Nevertheless, her sensation, strength, and gait remained normal and there was no mention of a cane. (R. 596). Though Plaintiff's depression score remained minimal, Dr. Alengo assessed her with major depressive disorder, recurrent and

9

moderate, and prescribed Bupropion. (R. 596-97). He made no change to her pain medications. (R. 597).

Plaintiff saw Dr. Alengo 8 more times through December 26, 2019 for medication refills and routine monitoring. On June 14, 2018, Dr. Alengo prescribed a single cane but continued to document normal gait, sensation, and strength with no medication changes. (R. 766-67). On August 9, 2018, Dr. Alengo prescribed Buspirone for generalized anxiety disorder. (R. 759). Plaintiff's strength, sensation, and gait remained normal. (R. 758). At her next four appointments, Plaintiff received medication refills for persistent tenderness in both knees. (R. 745-47, 773-74, 776-77). On May 16, 2019, Plaintiff reported chronic pain and discomfort in her left knee causing limited range of motion, but an exam showed full range of motion in the extremities. Dr. Alengo prescribed Carisoprodol. (R. 35). At her final appointment on December 26, 2019, Plaintiff started complaining of severe left shoulder pain, dizziness, numbness/tingling, frequent falls, and difficulty ambulating. This is the first record indicating Plaintiff was walking with a cane. (R. 32). Dr. Alengo told Plaintiff to stop taking Norco and switch to Soma as needed. (R. 33).

Plaintiff ignores many of these records and fails to explain how they support the extreme limitations set forth in Dr. Alengo's opinion, including a complete inability to lift any amount of weight at all, and a restriction to walking no more than 1/4 block, sitting for no more than 1 hour at a time, and sitting/standing/walking for no more than 2 hours total in an 8-hour workday. As the ALJ fairly observed, Dr. Alengo's findings are inconsistent with evidence that Plaintiff routinely presented with normal gait, strength, and sensation, and was able to control her pain with nothing but medication without ever seeing any

10

specialists or undergoing even physical therapy. (R. 25, 26). It is true that Plaintiff was routinely diagnosed with lumbar disc degeneration, knee osteoarthritis, muscle spasm, and COPD (Doc. 19, at 11-12; Doc. 26, at 6), but "[a] mere diagnosis does not establish functional limitations, severe impairments, or an inability to work." *Jeanine J. v. Kijakazi*, No. 4:21-CV-04044-SLD-JEH, 2022 WL 4483812, at *7 (C.D. Ill. Sept. 27, 2022) (quoting *Allen v. Astrue*, No. 10 C 994, 2011 WL 3325841, at *12 (N.D. Ill. Aug. 1, 2011)).

Plaintiff appears to believe that the October 2015 x-ray showing "severe degenerative disc disease" of the lumbar spine provides objective support for Dr. Alengo's findings. (Doc. 19, at 12; Doc. 26, at 6). To begin, this argument misleadingly suggests that there was severe disease throughout Plaintiff's entire back when, in fact, the severe finding was limited to a single level (L5-S1) and there was facet arthropathy (arthritis) noted at only two levels (L5-S1 and L4-L5). (R. 514). Moreover, Plaintiff fails to articulate how this record demonstrates that she can barely sit, stand, and walk while requiring nothing more than routine medication management for her pain. Similarly, the fact that Plaintiff presented to the emergency department in November 2014 due to nausea, vomiting, and shortness of breath does nothing to bolster Dr. Alengo's opinion. (Doc. 19, at 12; Doc. 26, at 7) (citing R. 458). This single event occurred before the alleged disability onset date and related to her GERD, and a physical exam that day showed full musculoskeletal range of motion, normal strength, and normal lung functioning. (R. 458-59).

There is also no merit to Plaintiff's suggestion that Dr. Alengo's opinion was entitled to greater weight simply because of his "long-time treating relationship" with her. (Doc. 19, at 11). As noted, the new regulations emphasize supportability and consistency, and

11

Dr. Alengo rendered his opinion after examining Plaintiff only three times. Nor did the ALJ fail to consider Plaintiff's obesity in evaluating the merits of Dr. Alengo's opined restrictions. The ALJ expressly acknowledged that Plaintiff's degenerative joint disease, degenerative disc disease and obesity would exacerbate pain symptoms and so limited her to: no climbing of ladders, ropes, or scaffolds; only occasional climbing of ramps and stairs; and only occasional balancing, stooping, kneeling, crouching, and crawling. (R. 19, 26).

Plaintiff finally objects that the ALJ did not properly consider Dr. Alengo's opinion that she suffers from severe mental impairments that would constantly interfere with her ability to maintain concentration and attention. (Doc. 19, at 12-13; Doc. 26, at 8). Dr. Alengo (a primary care physician) diagnosed Plaintiff with major depressive disorder after seeing her twice. (R. 596). Yet from October 12, 2015 through July 11, 2019, exams consistently documented minimal to mild depression that required nothing more than medication. At her own instance Plaintiff did go to the Lake County Health Department on February 7, 2018 for a mental health assessment. (R. 575) (noting Plaintiff referred herself). But she never attended therapy sessions or received psychological counseling of any kind. Plaintiff fails to address these normal records or explain how they support the functional restrictions set forth by Dr. Alengo. *Compare O'Connor-Spinner v. Colvin*, 832 F.3d 690, 692-94 (7th Cir. 2016) (diagnosis of major depression made by mental health professionals was alone evidence of impaired functioning where the plaintiff routinely presented with a depressed mood and restricted affect, and her medications at times had "limited efficacy.").

Viewing the record as a whole, the ALJ did not commit reversible error in finding that Dr. Alengo's opinion was not persuasive. Plaintiff's request to remand the case for further consideration of this issue is denied.

### 2. RFC

Plaintiff argues that the case still requires reversal or remand because the ALJ erred in determining her mental RFC. The Court agrees that further analysis of this issue is required. A claimant's RFC is the maximum work that she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012). *See also* 20 C.F.R. § 404.1527(f)(2). "Both the RFC assessment and the hypothetical question posed to the [VE] must include all of a claimant's limitations supported by the medical record." *Joshua J. H. v. Kijakazi*, No. 21 C 837, 2022 WL 2905673, at *2 (N.D. Ill. July 22, 2022).

At step two, the ALJ concluded that though Plaintiff's concentration was generally found to be intact, she nonetheless has mild limitations in concentrating, persisting, or maintaining pace ("CPP") due to pain and reported depressive symptoms. (R. 18). In formulating the RFC, however, the ALJ did not mention this mild CPP restriction or incorporate it into the questions posed to the VE. The omission is concerning because the ALJ found Plaintiff capable of performing her past relevant work as a hair stylist, which the VE classified as semi-skilled. (R. 27, 56-57). Courts have found that "the inclusion of even mild limitations in . . . concentration, persistence, or pace may preclude the ability

13

to perform such . . . semi-skilled work." *Cheryl C. v. Berryhill*, No. 18 C 1443, 2019 WL 339514, at *3 (N.D. Ill. Jan. 28, 2019). Since the ALJ did not ask the VE whether mild limitations in CPP would affect Plaintiff's ability to perform her past work, the Court cannot be certain that the ALJ's conclusion on this point is supported by substantial evidence. Remand is therefore necessary.

### 3. Remaining Arguments

The Court does not find any specific error with respect to Plaintiff's remaining arguments, but the ALJ should take the opportunity on remand to review all aspects of Plaintiff's RFC and reconsider her subjective statements regarding pain.

### CONCLUSION

For reasons stated above, Plaintiff's request to reverse or remand the ALJ's decision is granted, and the Commissioner's Motion for Summary Judgment [24] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

ENTER:

Dated: February 21, 2023

_____
SHEILA FINNEGAN
United States Magistrate Judge